UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARY BETH HARCROW, | |
| Plaintiff, | Case No. 3:18-cv-00828 |
| v. | Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |
| CLYDE HARCROW, et al., | |
| Defendants. | |

To:     The Honorable William L. Campbell, Jr., District Judge

## REPORT AND RECOMMENDATION

Pro se Plaintiff Mary Beth Harcrow (Harcrow) and her husband, Defendant Clyde Harcrow (C. Harcrow), are involved in divorce proceedings in Circuit Court in Sumner County, Tennessee. In this action, Harcrow alleges that her husband conspired with his divorce attorney, Defendant Joseph Y. Longmire; the Harcrows' adult daughter, Defendant Angelle Richardson; Defendant Leslie Harcrow (L. Harcrow), whose relation to the other parties is not stated; and police officers of Sumner County or the City of Millersville, Defendants John Does 1–99, to violate her civil rights and prevent her from divorcing C. Harcrow. Harcrow also alleges that Defendant District Attorney General Katherine Brown Walker refused to prosecute C. Harcrow for violating a protective order issued by a family court in Delaware that required C. Harcrow to stay away from their marital residence in Tennessee. Harcrow has sued the defendants under 42 U.S.C. § 1983 and various state-law theories. (Doc. No. 6.) Longmire, Walker, and Richardson have filed motions to dismiss. (Doc. Nos. 14, 24, 44.) For the reasons that follow, the Magistrate Judge will recommend that Longmire's and Richardson's motions be granted in part and denied in part and that Walker's

motion to dismiss be granted. The Magistrate Judge will also recommend that Harcrow be granted leave to file a proposed second amended complaint.

## I.      Background

### A.      Factual History

The factual context for this action is found across multiple filings, including Harcrow's first amended complaint, her motion for an emergency hearing and preliminary injunction, and state-court filings. In the interests of clarity and justice, the following factual history draws from those filings to present a chronological narrative of the events at issue in this action. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) ("A court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion."); *see also Simpson v. Baskin*, No. 3:17-cv-01077, 2018 WL 1070897, at *2 (M.D. Tenn. Feb. 26, 2018) (considering allegations outside of pro se plaintiff's complaint in ruling on Rule 12(b)(6) motion because plaintiff could move to amend her complaint to include those allegations), *report and recommendation adopted by* 2018 WL 1288908 (M.D. Tenn. Mar. 13, 2018). The facts as Harcrow states them are taken as true for purposes of ruling on the motions to dismiss.

In July 2017, Harcrow discovered that C. Harcrow, her husband of thirty-six years, had been living a "double life" to conceal romantic affairs. (Doc. No. 6, PageID# 57.) When Harcrow confronted her husband, he began a campaign to "silence" her accusations and prevent her from initiating a divorce. (*Id.*) With the help of the Doe Officers, C. Harcrow used "police resources, technology, and databases" to stalk Harcrow, intercept and obstruct her telecommunications and email, and otherwise harass and intimidate her. (*Id.*) In the fall of 2017, C. Harcrow attempted to poison Harcrow, abandoned her on the side of the road, raped her twice, and physically assaulted her, causing a severe head injury. (*Id.* at PageID# 60–61.) Harcrow alleges that the assaults took place in Tennessee and Delaware. (Doc. No. 7.) Harcrow made repeated requests for police

assistance during this time, which the Doe Officers ignored. (Doc. No. 6.) Harcrow alleges that the "other defendants," including Longmire, shared in the plan to violate her rights and "aided and abetted" C. Harcrow's campaign of violence. (*Id.* at PageID# 47.)

On January 5, 2018, Harcrow obtained a temporary ex parte order of protection in the Family Court of the State of Delaware for New Castle County. (Doc. No. 6.) That order, which remained in effect until February 2, 2018, prohibited C. Harcrow from coming within 100 yards of Harcrow or attempting to contact her in any way. (*Id.*) On March 9, 2018, after a hearing, the Family Court entered a consent order that granted Harcrow "exclusive use and possession" of the marital residence in Goodlettsville, Tennessee (the Goodlettsville Property) and prohibited C. Harcrow from (1) coming within 100 yards of Harcrow's person or residence and (2) disposing in any way of property in which Harcrow has an interest. (*Id.*) The order states that it "complies with all requirements of [18 U.S.C. § 2265] and is entitled to full faith and credit in any State . . . ." (*Id.* at PageID# 99.) The Family Court further stated that the parties could not waive the terms of the order and would have to file a motion to modify or rescind it. (*Id.*) In the absence of such a motion, the order would be in effect until March 9, 2019. (*Id.*)

At some point in 2018, Harcrow filed for divorce in the Circuit Court for Sumner County, Tennessee. (Doc. No. 7.) In that proceeding, C. Harcrow, who was represented by Longmire, filed a motion for permission to enter the Goodlettsville Property for the purpose of an inspection and inventory of the property. (*Id.*) The Circuit Court granted the motion on August 27, 2018, authorizing C. Harcrow and "a home inspector" to "gain entry to the home via locksmith, if necessary, on a date and time agreed to by [Harcrow's] counsel[,]" in order "to inspect the status of the structure as well as inventory the personal property therein." (Doc. No. 20-1, PageID# 386.) The court also noted that, "[b]y agreement of the parties," C. Harcrow could "have immediate

possession of his pellet gun and clothing located within [the Goodlettsville Property]." (*Id.* at PageID# 386–87.)

It appears that C. Harcrow was acting pursuant to the August 27, 2018 order on the morning of September 18, 2018, when Harcrow discovered him on the Goodlettsville Property "with crews of work men, some of whom were climbing on the roof of the property." (Doc. No. 7, PageID# 104–105.) Harcrow characterizes this attempted inspection as a trespass that was "aided and abetted" by Longmire, Richardson, L. Harcrow, the Doe Officers, and District Attorney General Walker. (Doc. No. 6, PageID# 67, 77.) Harcrow called the police to report a burglary. (Doc. No. 7.) When the Doe Officers arrived, Harcrow showed them the protective order, but they claimed they were not bound to enforce it. (Doc. No. 7.) District Attorney General Walker then refused to prosecute C. Harcrow for violating the protective order. (Doc. No. 6.) Longmire, Richardson, and L. Harcrow tried to get the Doe Officers to arrest Harcrow, who refused to surrender the house. (Doc. No. 7.)

C. Harcrow and Longmire responded by filing a motion in Circuit Court seeking to compel Harcrow to comply with the August 27, 2018 order. (*Id.*) The motion stated that C. Harcrow had hired a home inspector to inventory the contents of the Goodlettsville Property on September 18, 2018, "as agreed to by counsel" for both parties, and that, despite Harcrow's prior representation to the court that she would be in Arizona, she was physically present on the property and called the police. (*Id.* at PageID# 146.) The Circuit Court granted that motion on October 9, 2018. (Doc. No. 20-2.) The order authorized a home inspector, C. Harcrow, and his three adult daughters "to physically attend said inspection for the purposes of photography and inventorying the personal property within the marital residence . . ." on October 16, 2018. (*Id.* at PageID# 389.) The order added, inconsistently, that "**<u>only</u>** counsel of record or their staff may attend said

inspection/inventory" and specifically prohibited Harcrow from being there. (*Id.* (emphasis in original).)

It is not clear whether the October 16, 2018 inspection ever occurred. However, Harcrow alleges that C. Harcrow, Longmire, Richardson, L. Harcrow, and the Doe Officers trespassed on the Goodlettsville Property twice in November 2018, rifling through and converting Harcrow's personal property. (Doc. No. 50.) On December 18, 2018, the Family Court of the State of Delaware entered a consent order modifying the March 9, 2018 order to allow C. Harcrow to "return to [the Goodlettsville Property] as allowed by the Tennessee Court handling the parties' property division related to their divorce." (Doc. No. 20-3, PageID# 394.)

## B.     Procedural History

On September 4, 2018, proceeding pro se, Harcrow initiated this action by filing a complaint that named C. Harcrow and unnamed police officers employed by the City of Millersville or Sumner County as defendants. (Doc. No. 1.) Before summonses had issued to any defendants, Harcrow filed a first amended complaint adding Longmire, Richardson, L. Harcrow, Walker, Sumner County, and the City of Millersville as defendants. (Doc. No. 6.)

The first amended complaint contains four counts. Count I, which includes four separate counts, asserts claims against:

- C. Harcrow, the Doe Officers, Longmire, Richardson, and L. Harcrow under 42 U.S.C. § 1983, alleging that they conspired, "according to a common plan," to violate Harcrow's constitutional rights under the First, Sixth, and Fourteenth Amendments and, more specifically, her rights to "free speech, due process, privacy, and access to the judicial system/police protection . . ." (Doc. No. 6, PageID# 55);

- C. Harcrow, the Doe Officers, Longmire, Richardson, and L. Harcrow for violating Tennessee Code Annotated § 39-17-309, a criminal statute that prohibits intimidation of others to deter their exercise of civil rights, *see* Tenn. Code Ann. § 39-17-309(b);

- Sumner County or the City of Millersville under § 1983 for authorizing—through "lax and permissive policies and customs"—the illegal conduct of the Doe Officers (Doc. No. 6, PageID# 76); and

- Walker for violating various federal and state laws by refusing to prosecute C. Harcrow (*id.* at PageID# 77–78).[1]

Counts II through V assert claims against C. Harcrow under state law for physical assault and battery, sexual assault and battery, civil conversion, and intentional infliction of emotional distress. (Doc. No. 6.) Harcrow seeks damages for each of her claims. (*Id.*) She also requests an order declaring the conduct of the Doe Officers unconstitutional and a preliminary injunction requiring Sumner County and the City of Millersville "to adopt appropriate policies related to the proper use/misuse of Sumner County, or City of Millersville police technology, data systems, equipment, and resources[.]" (*Id.* at PageID# 88–89.)

Harcrow filed a motion for an emergency hearing and preliminary injunction with her first amended complaint, asserting that C. Harcrow was trying to compel an inspection of the Goodlettsville Property and asking the Court to enjoin the defendants from any further attempts to violate the March 9, 2018 protective order. (Doc. No. 7.) Harcrow's motion did not describe her efforts to notify the defendants of her request for injunctive relief, and there was no indication that any of them had been served at the time the motion was filed. In an October 19, 2018 report and recommendation, the Magistrate Judge found that the only type of injunctive relief entered on an ex parte basis is a temporary restraining order and concluded that Harcrow had failed to show that one was justified in this case. (Doc. No. 10.) The Magistrate Judge recommended that the Court

---

[1] As Walker states in her motion to dismiss, she is not listed in the caption of Count I of the first amended complaint. (Doc. No. 24-1.) Given the allegations against Walker that follow the caption, Harcrow's omission of Walker's name from the caption appears to have been inadvertent.

deny Harcrow's motion for an ex parte restraining order and defer ruling on her request for a preliminary injunction until all adverse parties had been served and received notice of it. (*Id.*)

On February 20, 2019, after being served and making an appearance in this action, Longmire responded in opposition to Harcrow's motion for injunctive relief, arguing that the Court should decline to exercise jurisdiction over Harcrow's attempts to interfere with her pending divorce proceedings. (Doc. No. 20.) In support of his response, Longmire filed the October 9, 2018 order from the Circuit Court granting C. Harcrow's motion to compel inspection of the Goodlettsville Property and the December 18, 2018 consent order entered in the Family Court of the State of Delaware that modified the March 9, 2018 protective order. (Doc. Nos. 20-2, 20-3.)

On March 5, 2019, the Court adopted the Magistrate Judge's report and recommendation, denying Harcrow's request for an ex parte restraining order and deferring ruling on her request for a preliminary injunction until all defendants had been served and received notice. (Doc. No. 25.) To date, Harcrow has not filed proof of service for C. Harcrow, L. Harcrow, or the Doe Officers. The Court will address service of those defendants by separate order.

Longmire and Richardson have filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) raising almost identical arguments. (Doc. Nos. 14, 15, 44, 45.) They argue that Harcrow's § 1983 claims against them fail because they were not acting under color of law for purposes of liability under that statute and, regardless, Harcrow's repeated allegations that they aided and abetted C. Harcrow's illegal conduct are too vague to state a claim for relief. (Doc. Nos. 15, 45.) With respect to Harcrow's claim that Longmire and Richardson violated Tennessee Code Annotated § 39-17-309, they argue that there is no private right of action under that statute. (*Id.*) Longmire also argues that the Court should refuse to interfere with the Harcrows' pending divorce

and cites case law concerning the domestic-relations exception to federal subject-matter jurisdiction.[2] (Doc. No. 15.)

Harcrow responded in opposition to both motions, providing additional factual allegations to explain how Longmire and Richardson aided and abetted C. Harcrow to violate Harcrow's civil rights. (Doc. Nos. 26, 50.) Harcrow's responses also reference a motion for leave to amend her complaint to add claims under 42 U.S.C. § 1985(3), which Harcrow states that she filed along with her response to Longmire's motion to dismiss, although no such filing appears in the Court's docket. (*Id.*) In their replies, Longmire and Richardson point out that Harcrow never filed such a motion and argue that Harcrow's effort to amend her complaint to add claims under § 1985(3) would be futile. (Doc. Nos. 27, 51.)

Walker has also filed a motion to dismiss under Rule 12(b)(6). (Doc. Nos. 24, 24-1.) She argues that, as an assistant district attorney general employed by the State of Tennessee, sovereign immunity bars any claims for damages against her in her official capacity. (Doc. No. 24-1.) To the extent that she has been sued in her individual capacity, Walker argues that she is entitled to prosecutorial immunity. (*Id.*) Harcrow responded in opposition, arguing that the March 2018 protective order created a special duty to protect her, and that Walker's negligent failure to fulfill that duty by prosecuting C. Harcrow subjects Walker to liability under Tennessee's Governmental Tort Liability Act. (Doc. No. 35.)

---

[2]     Longmire stated that he intended to supplement his motion to dismiss to develop a *Younger* abstention challenge. (Doc. No. 20, PageID# 384, n.4.)  Longmire has not filed any supplement and the Magistrate Judge does not address this argument.

## II.      Legal Standard

### A.      Subject-Matter Jurisdiction

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Therefore, whether subject-matter jurisdiction exists is a "threshold" question in any action, *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007), and one that courts may raise sua sponte, *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005). This reflects the fundamental principle that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

Although Rule 12(b)(6) and Rule 12(b)(1) are both "appropriate mechanisms to dismiss claims barred by Eleventh Amendment sovereign immunity[,]" that defense is typically raised in a Rule 12(b)(1) motion. *Oshop v. Tenn. Dep't of Children's Servs.*, No. 3:09-cv-0063, 2009 WL 1651479, at *2 (M.D. Tenn. June 10, 2009). Walker's sovereign-immunity argument will therefore be construed as a motion to dismiss under Rule 12(b)(1). Such a challenge can come in two forms. A facial attack accepts the material allegations of the complaint as true but insists nonetheless that the court lacks subject-matter jurisdiction to hear the case. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A factual attack claims that the court lacks subject-matter jurisdiction regardless of what the plaintiff has pleaded and requires the trial court to weigh the evidence before it in determining whether that is the case. *Id.* "A state's assertion of sovereign immunity constitutes a factual attack." *Hornberger v. Tennessee*, 782 F. Supp. 2d 561, 563 (M.D. Tenn. 2011). In response to a factual attack, the plaintiff bears the burden of establishing the existence of subject-matter jurisdiction. *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330.

### B. Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court views Harcrow's allegations in the light most favorable to her and accepts all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To meet it, Harcrow must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Finally, because Harcrow proceeds pro se, the Court construes her filings "liberally" and holds them "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III. Analysis

#### A. The Domestic-Relations Exception to Subject-Matter Jurisdiction

Longmire argues that the Court should leave the disputes raised in this action to the Circuit Court handling the Harcrows' divorce because federal courts should generally decline to exercise

jurisdiction over actions presenting "delicate issues of domestic relations[.]" *Cole v. Cole*, No. 3-12-0153, 2012 WL 1825700, at *5 (M.D. Tenn. May 18, 2012). Harcrow does not respond to this argument.

Longmire overstates the applicability of the domestic-relations exception to subject-matter jurisdiction. Under that exception, federal courts lack jurisdiction to entertain a suit seeking "'to modify or interpret an existing divorce, alimony, or child-custody decree.'" *Alexander v. Rosen*, 804 F.3d 1203, 1205 (6th Cir. 2015) (quoting *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015)). In determining whether subject-matter jurisdiction exists, the "key question is whether the case is 'a core domestic relations case, seeking a declaration of marital or parental status, or a [federal] claim in which it is incidental that the underlying dispute involves a [domestic relations dispute]." *Johnson v. Collins*, Civil No. 15-31, 2015 WL 4546794, at *3 (E.D. Ky. July 28, 2015) (second alteration in original) (quoting *Catz v. Chalker*, 142 F.3d 279, 291 (6th Cir. 1998), *abrogated on other grounds by Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir. 2006)). To answer that question, the Court focuses on Harcrow's desired relief, and not, as Longmire suggests, on whether this action is "intertwined" with the divorce proceeding (Doc. No. 15, PageID# 370). The Court lacks jurisdiction under the domestic-relations exception only if Harcrow "seeks to modify or interpret the terms of an existing divorce, alimony, or child-custody decree." *Chevalier*, 803 F.3d at 795 (6th Cir. 2015).

Harcrow's complaint does not seek to modify or interpret an existing order in her divorce proceeding and, instead, primarily seeks damages based on various alleged violations of her rights under federal and state law. The equitable relief that Harcrow requests in her complaint has nothing to do with her divorce. Although Harcrow's motion for a permanent injunction did ask the Court to enjoin the defendants from violating the March 9, 2018 protective order—which could be read

as a request to nullify the order in her divorce allowing the inspection to proceed—the Harcrows consented to modify that order on December 18, 2018, to allow C. Harcrow to access the Goodlettsville Property as authorized by the divorce court. Harcrow's request for injunctive relief pertaining to the March 9, 2018 protective order is therefore moot. Because Harcrow has not asked for modification or interpretation of an order in her divorce proceeding, the domestic-relations exception does not deprive the Court of subject-matter jurisdiction over this action.

### A.    Harcrow's Claims Against Longmire and Richardson

Harcrow asserts claims against Longmire and Richardson under § 1983 and Tennessee Code Annotated § 39-17-309. Harcrow also seeks to add a claim against these defendants under § 1985(3). As explained below, although the allegations of Harcrow's first amended complaint are insufficient to state a claim against Longmire or Richardson under § 1983, Harcrow's other filings contain additional allegations against those defendants that could withstand their motions to dismiss. *See Harding v. Davidson Cty. Sheriff's Office*, No. 3:-13-cv-0449, 2013 WL 5774937, at *3 (M.D. Tenn. Oct. 25, 2013) (explaining that, although allegations not made in a complaint "are not properly factual averments that can support a claim for relief[,]" the court would consider such allegations in ruling on defendants' motion to dismiss in light of plaintiff's pro se status and the fact that he could move to amend his complaint to include those allegations). Given Harcrow's pro se status, the Court will allow her an opportunity to amend her complaint to include those allegations. The same is not true of Harcrow's claims under § 39-17-309 and § 1985(3). None of Harcrow's filings contain allegations that would support a claim for relief under either statute, and those claims should be dismissed.

### 1.    Section 1983

To state a claim against Longmire or Richardson under § 1983, Harcrow must allege that each defendant (1) deprived her of a federal constitutional or statutory right (2) while acting under

color of state law. *Hahn v. Star Bank*, 190 F.3d 708, 717 (6th Cir. 1999). In their motions to dismiss, Longmire and Richardson take aim at the second element, arguing that they are private citizens. not state actors, and therefore did not act under color of state law. The color-of-law analysis hinges on whether "the alleged infringement of federal rights is 'fairly attributable to the state.'" *King v. United States*, 917 F.3d 409, 432 (6th Cir. 2019) (quoting *Crowder v. Conlan*, 740 F.2d 447, 449 (6th Cir. 1984)).

Longmire and Richardson are right that the Sixth Circuit has recognized three tests to determine whether the conduct of a private party is fairly attributable to the state: "the public function test, the state compulsion test, and the nexus test." *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). What Longmire and Richardson overlook, however, is the doctrine that finds action under color of state law where a pleading contains "allegations of cooperation or concerted action between state and private actors." *Id.* If Longmire or Richardson conspired with a state official to violate Harcrow's rights, they may be considered state actors subject to liability under § 1983.

To plead such a conspiracy, Harcrow must allege "that there was a single plan, that [each] alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused [Harcrow] injury . . . ." *Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). Harcrow need not allege an explicit agreement among all conspirators, nor that each of them knew all of the details of such an agreement. *Id.* However, "conspiracy claims must be pleaded with some degree of specificity[.]" *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2011)). "[V]ague and conclusory allegations" of conspiracy are not sufficient to survive a motion to dismiss under Rule 12(b)(6). *Id.*

In her first amended complaint, Harcrow has adequately alleged the first and third elements of a § 1983 conspiracy. She alleges that there was a single, "common plan to violate [her] civil and constitutional rights . . ." to "prevent [her] from proceeding with her plans to divorce [C.] Harcrow[.]" (Doc. No. 6, PageID# 46–47.) She has also alleged that she was injured by overt acts taken in furtherance of that conspiracy, including C. Harcrow's use of police technology to track and harass her and the police-facilitated trespass on the Goodlettsville Property on September 18, 2018. *See Memphis, Tenn. Area Local*, 361 F.3d at 905–06 (finding that plaintiff had pleaded a § 1983 conspiracy by alleging that private actors and police officers agreed to deprive the plaintiff union "of its rights, privileges, and immunities" and that private actors had directed "police officers to harass, threaten and intimidate the plaintiff").

However, Harcrow's complaint lacks allegations showing that Longmire and Richardson shared in the conspiratorial objective to violate her rights. As Longmire and Richardson emphasize, all that Harcrow has alleged with respect to them is that they "aided and abetted" C. Harcrow and the Doe Officers. (Doc. Nos. 15, 50.) Harcrow cannot, through such conclusory allegations, attribute the acts and motives of C. Harcrow and the Doe Officers to Longmire or Richardson. Harcrow's allegations against Longmire and Richardson are couched as "legal conclusions" and need not be accepted as true for the purpose of ruling on their motions to dismiss. *Heyne*, 655 F.3d at 563–64. Instead, Harcrow "must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right[,]" and her complaint's unelaborated allegations of aiding and abetting are insufficient to meet that burden. *Heyne*, 655 F.3d at 564 (emphasis in original).

Harcrow's other filings contain additional factual allegations against Longmire and Richardson that are pertinent to this analysis. For instance, Harcrow alleges that, during the alleged

trespass on September 18, 2018, Longmire and Richardson pleaded with the Doe Officers to have Harcrow arrested. (Doc. Nos. 7, 50.) One of the Doe Officers told Harcrow that he had "heard all about [her]" and intended to arrest her. (Doc. No. 50, PageID# 651.) Richardson then approached Harcrow with balled fists and began yelling insults at her in an attempt to provoke an altercation that would lead to Harcrow's arrest. (Doc. Nos. 50.) Harcrow escaped by locking herself in her car. (*Id.*) Harcrow also alleges that Longmire and Richardson, along with C. Harcrow, L. Harcrow, and the Doe Officers, trespassed on the Goodlettsville property twice in November 2018, rifling through and converting Harcrow's personal property. (Doc. No. 50.) At the pleading stage, these allegations are sufficient to demonstrate Longmire and Richardson shared in the conspiratorial objective to violate Harcrow's civil rights. Harcrow should be afforded an opportunity to include them in her complaint.

### 2. Tennessee Code Annotated § 39-17-309

Tennessee Code Annotated § 39-17-309 "declares that it is the right of every person regardless of race, color, ancestry, religion or national origin, to be secure and protected from fear, intimidation, harassment and bodily injury caused by the activities of groups and individuals." Tenn. Code Ann. § 39-17-309(a). To vindicate that right, the statute creates the "offense of intimidating others from exercising civil rights[,]" which is punishable as a Class D felony. *Id.* § 39-17-309(b), (d). Longmire and Richardson correctly argue that the Tennessee Court of Appeals has held that § 39-17-309 is a criminal statute that does not create a private right of action. *See Davis v. Tenn. Wildlife Res. Agency*, No. W2005-00406-COA-R3CV, 2006 WL 861352, at *7 (Tenn. Ct. App. Apr. 5, 2006). However, in reaching that conclusion, the Tennessee Court of Appeals noted that the legislature has already provided for a civil action based on § 39-17-309 in

enacting Tennessee Code Annotated § 4-2-701, which creates a cause of action for malicious harassment. *Id.* (citing *Washington v. Robertson Cty.*, 29 S.W.3d 466, 468 (Tenn. 2000)).

To the extent that Harcrow intended to assert a malicious harassment claim against Longmire or Richardson, that claim fails. An essential element of such a claim is "that the perpetrator was motivated by the victim's race, color, religion, ancestry or national origin." *Id.* (citing *Levy v. Franks*, 159 S.W.3d 66, 80 (Tenn. Ct. App. 2004)). Harcrow makes no allegations of that nature.

### 3. Section 1985(3)

In her response in opposition to Longmire's and Richardson's motions to dismiss, Harcrow attempts to assert claims against them under 42 U.S.C. § 1985(3). The defendants respond that Harcrow never amended her complaint to add claims under that statute and, regardless, such claims would fail. Section 1985(3) "'creates a cause of action for conspiracy to violate civil rights,' that is, to deprive a person of equal protection and privilege under the law." *Montano-Perez v. Durrett Cheese Sales, Inc.*, 666 F. Supp. 2d 894, 904 (M.D. Tenn. 2009) (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir.2007)). To state a claim under the statute, Harcrow "must allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action." *Id.* Again, Harcrow has not alleged that any defendant's actions were motivated by class-based animus, and her § 1985(3) claims must fail.

### B. Harcrow's Claims Against Walker

Harcrow has sued Walker under 42 U.S.C. § 1983 for violating her rights under the Fourth, Sixth, and Fourteenth Amendments by refusing to prosecute C. Harcrow. (Doc. No. 6.) Harcrow also alleges that Walker violated

> Federal and Tennessee law, including but not limited to Tennessee Code § 36-3-601 (Domestic Abuse), Tennessee Code § 36-3-604(b) (Protective Order), Tennessee Code § 36-3-611 (Mandatory Arrest), Tennessee Code § 39-13-111

(Domestic Assault), 18 U.S.C. § 2261 (Violence Against an Intimate Partner), 18
U.S.C. § 2261A (Stalking), [and] 18 U.S.C. § 2262 (Violation of Valid PFA) . . . .

(*Id.* at PageID# 50–51.) Walker rightly points out that none of the quoted statutes creates a cause
of action for damages—the Tennessee statutes are part of the Domestic Abuse Act and concern
issuance and enforcement of an order of protection, Tenn. Code Ann. §§ 36-3-601, 36-3-604(b),
36-3-611, while the federal criminal statutes were enacted as part of the Violence Against Women
Act and prohibit interstate stalking and violation of protection orders, *see* 18 U.S.C. §§ 2261A,
2262; *see also Rock v. BAE Sys., Inc.*, 556 F. App'x 869, 871 (11th Cir. 2014) (holding that there
is nothing in § 2261A's language to indicate that it is anything other than a criminal statute);
*Agundis v. Rice*, No. 2:17-cv-00536, 2018 WL 3428618, at *10 (N.D. Ala. July 16, 2018)
(concluding that there is no private right of action in § 2262). In her response in opposition to
Walker's motion to dismiss, Harcrow clarifies that she has sued Walker "for any and all damages
. . . due to Walker's negligent non-action on [Harcrow's] formal request" to enforce the March 18,
2018 protective order. (Doc. No. 35, PageID# 523.) Liberally construed, Harcrow's complaint
asserts damages claims against Walker under a theory of state-law negligence and 42 U.S.C.
§ 1983.

Walker argues that, because Harcrow's complaint does not specify the capacity in which
Walker is sued, the Court should "assume [that Walker is] being sued in [her] official capacity
only." (Doc. No. 24-1, PageID# 414 n.2.) But Harcrow's complaint may be construed as asserting
a claim against Walker in her individual capacity because Harcrow seeks damages from Walker,
which are generally only available from state officials in individual capacity suits. Further, Walker
has raised defenses—i.e., absolute and qualified prosecutorial immunity (Doc. No. 24-1)—that are
only available against individual-capacity claims, indicating that Walker was on notice that she
might have been sued in her individual capacity. *See Rodgers v. Banks*, 344 F.3d 587, 594 (6th

Cir. 2003) (explaining that, to determine the capacity in which a state official has been sued when the plaintiff's complaint is silent on that question, the court employs a "course of proceedings" test, which considers "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity . . ."). Therefore, the analysis that follows considers claims against Walker in her official and individual capacity. Sovereign immunity bars Harcrow's official-capacity claims and absolute prosecutorial immunity shields Walker from Harcrow's individual capacity claims.

### 1.     Sovereign Immunity

Due to "the nature of sovereignty" and "the Tenth and Eleventh Amendments to the United States Constitution[,]" the States are immune from certain categories of suits in federal court. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (quoting *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)). An action for damages against a state official in her official capacity qualifies as a lawsuit against the state itself and is generally barred by sovereign immunity. *Id.* (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Walker correctly argues that, as an assistant district attorney general, she is a state official capable of invoking the defense of sovereign immunity. *See White ex rel. Swafford v. Gerbitz*, 860 F.2d 661, 664 n.2 (6th Cir. 1988) (explaining that, because assistant district attorney generals in Tennessee prosecute suits on behalf of the state and receive their annual salaries from the state treasury, a suit against them in their official capacity is a suit against Tennessee). Sovereign immunity will bar Harcrow's claims for damages unless (1) Tennessee has consented to such a suit and thereby waived its immunity, (2) Congress has properly abrogated Tennessee's immunity to Harcrow's claims, or (3) the *Ex Parte Young* exception applies. *S & M Brands, Inc.*, 527 F.3d at 507.

None of the exceptions to sovereign immunity applies here. Harcrow cites the Tennessee Supreme Court case *Matthews v. Pickett County*, 996 S.W.2d 162 (Tenn. 1999), and the Tennessee Governmental Tort Liability Act (GTLA), Tenn. Code Ann. § 29-20-101 et seq., to argue that Tennessee has waived Walker's immunity to suit. (Doc. No. 25.) The GTLA abrogates the sovereign immunity of cities and counties in Tennessee under certain circumstances, but "is not and never has been applicable to the State of Tennessee or its agencies and departments." *Lucas v. State*, 141 S.W.3d 121, 126 (Tenn. Ct. App. 2004). Further, in *Matthews*, the Tennessee Supreme Court held that the defendant police officers were not immune from liability under the GTLA and could not assert the public-duty defense to a negligence action because the restraining order entered in favor of the plaintiff had created a special duty to protect her; that holding has no bearing on whether Walker, sued in her official capacity as a state prosecutor, can invoke the defense of Eleventh Amendment immunity. *See Matthews*, 996 S.W.2d at 164–65.

Nor has Congress abrogated Tennessee's immunity to Harcrow's claims. Section 1983 "does not abrogate Eleventh Amendment immunity." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (citing *Will*, 491 U.S. at 58, 66). Neither a State, nor a state official sued in her official capacity for damages, is a "person" subject to suit under § 1983. 42 U.S.C. § 1983 ("Every *person* who, under color of" law, violates another's federal rights, "shall be liable to the party injured in an action at law . . .") (emphasis added); *Will*, 491 U.S. at 64, 71.

Finally, the doctrine of *Ex parte Young* is inapplicable. Under that doctrine, a state official who seeks to enforce a law that violates the federal Constitution is "stripped of [her] official or representative character and is subjected in [her] person to the consequence of [her] individual conduct." *Ex parte Young*, 209 U.S. 123, 159 (1908); *see also Will*, 491 U.S. at 71 n.1 (explaining that a state official sued in his or her official capacity for injunctive relief, is a "person" subject to

19

suit under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). However, the Supreme Court has clarified that, under *Ex parte Young*, "a federal court's remedial power . . . is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). Here, Harcrow alleges that Walker's refusal to prosecute C. Harcrow for violating the protective order caused Harcrow serious injury, "in an amount in excess of $1 million[.]" (Doc. No. 6, PageID# 78.) There is no indication that Harcrow's alleged injury is anything other than a request for a retroactive award of damages, which is barred by the Court's holding in *Edelman*. *See* 415 U.S. at 677. The *Ex parte Young* exception to sovereign immunity is therefore inapplicable and Harcrow's damages claims against Walker in her official capacity are barred.

### 2. Absolute Prosecutorial Immunity

"Absolute [prosecutorial] immunity is a personal defense" that is only available to defend against an individual-capacity claim. *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009). In *Imber v. Pachtman*, the Supreme Court held that such immunity shields prosecutors sued under § 1983 from liability when the prosecutor's alleged misconduct was "intimately associated with the judicial phase of the criminal process[.]" 424 U.S. 409, 431 (1976). The Court provided the following rationale for the holding:

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.

*Id.* at 424–25. Courts use a "'functional approach'" to determine whether a prosecutor's conduct is intimately associated with the judicial phase of the criminal process. *Cady*, 574 F.3d at 340 (quoting *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003)). "If the challenged actions of the prosecutor were not performed in [her] role as advocate, if they do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings, then only qualified immunity applies." *Id.* (quoting *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006)).

Walker is correct that absolute prosecutorial immunity shields her from Harcrow's § 1983 claim, which is based on Walker's refusal to prosecute C. Harcrow for his alleged violations of the March 9, 2018 protective order. A prosecutor's decision about whether "to charge a defendant with a crime may well be the most critical determination in the entire prosecutorial process[,]" *Roe v. City & Cty. of S.F.*, 109 F.3d 578, 583 (9th Cir. 1997), and courts have consistently held that such a decision is intimately associated with the judicial phase of the criminal process. *See id.* (holding that "a prosecutor is entitled to absolute immunity for the decision not to prosecute"); *Harrington v. Almy*, 977 F.2d 37, 40 (1st Cir. 1992) (same); *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) (same); *Schloss v. Bouse*, 876 F.2d 287, 290 (2d Cir. 1989) (same); *Meade v. Grubbs*, 841 F.2d 1512, 1532 (10th Cir. 1988) (same), *abrogated on other grounds by Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013); *Coon v. Froehlich*, 573 F. Supp. 918, 921 (S.D. Ohio 1983) (finding persuasive the "uniform authority" that a prosecutor has absolute immunity for deciding not to prosecute a person . . ."). Walker is therefore entitled to absolute prosecutorial immunity from Harcrow's § 1983 claim.

That analysis also applies to Harcrow's negligence claim. Tennessee courts have held that, because "the same immunity is applied in [section] 1983 actions as is applied in common law actions, the decisions in those cases such as *Imbler* which involve prosecutorial immunity under

[section] 1983 are equally applicable to common law actions." *Willett v. Ford*, 603 S.W.2d 143, 147 (Tenn. Ct. App. 1979); *Spurlock v. Whitley*, 971 F. Supp. 1166, 1186–87 (M.D. Tenn. 1997) ("Tennessee courts have adopted the analysis of prosecutorial immunity used by federal courts in Section 1983 actions."). Therefore, absolute prosecutorial immunity shields Walker from Harcrow's negligence claim as well.

## IV.       Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Longmire's and Richardson's motions to dismiss (Doc. Nos. 14, 44) be GRANTED IN PART AND DENIED IN PART: those motions should be GRANTED with respect to Harcrow's claims under Tennessee Code Annotated § 39-17-309 and § 1985(3) but DENIED with respect to Harcrow's § 1983 claims and Longmire's challenge to the Court's subject-matter jurisdiction. The Magistrate Judge further RECOMMENDS that Harcrow be granted leave to amend her complaint to include the allegations she has made in other filings that supplement her claims. Finally, the Magistrate Judge RECOMMENDS that Walker's motion to dismiss (Doc. No. 24) be GRANTED and Harcrow's claims against her in her official and individual capacities be DISMISSED.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 12th day of August, 2019.

ALISTAIR E. NEWBERN
United States Magistrate Judge

22